GEORGE L. SWAN *v.* WILLIAM SWAN AND HARRIET W. SWAN.

[IN CHANCERY.]

*Mortgage. Divorce. Alimony. Subrogation. Ante-Nuptial Contract.*

After two mortgages had been placed on his farm the mortgagor's wife obtained a divorce, and $1750, having been decreed her as alimony, was made a further lien on the farm. These three liens or charges remaining, the parties after some two years were re-married, first entering into an ante-nuptial agreement by which she was to receive a deed of one-half of the farm, and when he had paid the mor'gages the claim for alimony was to be discharged. The deed was executed, but the mortgages were unpaid. They continued to live on the farm for about three years, when he conveyed away his interest, and abandoned her. The owner of the mortgages took possession of the premises and occupied for several years, taking the rents and profits amounting to $200 per year. A bill being brought to foreclose the mortgages. *Held,*

1. If the husband paid the mortgages the deduction for rents should be at the rate of $100 per year; but if the wife paid, it should be $200 per year; that is, the use of her half could not be appropriated to pay his debts.

2. If she is compelled to pay the mortgages she should be subrogated to the rights of the petitioner.

3. When the mortgages are paid her deed will operate a satisfaction of her decree for alimony.

BILL of foreclosure. Heard December Term, 1881, on a master's report. POWERS, Chancellor, decreed:

The petitioner may have a decree of foreclosure upon the Spencer Smith and Wallace W. Swan mortgages, described in the petition against both defendants, for the amounts reported, with accruing interest, and deducting future accruing rents and profits at the rate of $200 per year. As to defendant William, the day of redemption is limited to Jan. 1, 1883; and as to defendant Harriet, the day of redemption is extended to Feb. 1, 1883, and in case she is compelled to redeem she shall be subrogated to the rights of the petitioner against said William under this decree, and may enforce the same against said William's half of said farm.

The ante-nuptial contract was, in part:

" This certifies that William Swan has this day deeded to me one undivided half of his farm, . . . . (naming said two mortgages) and I have a claim on aforesaid farm for the sum of $1750, it being a decree for alimony and a charge and lien on aforesaid farm ; . . . and I hereby promise and agree that when the aforesaid mortgages are fully paid and released from said farm, that I will release and fully discharge the said Swan from all liabilities in consequence of said decree."

The master found, in part:

" In relation to this the master finds that when the said William and Harriet made and executed the papers last aforesaid, it was mutually expected and intended that the two mortgages on said farm should be paid by the undivided avails of said farm ; and that each of them there expected to live together and work together on said farm for the purpose of. paying said mortgages, expecting when said mortgages were paid that each would own an undivided half of said farm. In relation to this the master finds that said expectation and intention on the part of the said Harriet was based on the consideration that they were to live and work together, and that when the said William sold and conveyed to King and left the State, as aforesaid, the said Harriet was released from any obligation to assist in paying said mortgages if any such obligation ever existed."

The other facts are stated in the opinion of the court and in the head notes.

*S. B. Hebard* and *A. S. Austin*, for the orator.

*Lamb & Tarbell* and *D. C. Denison & Son*, for the defendant William Swan.

The opinion of the court was delivered by

VEAZEY, J. The decree of the chancellor was correct except in case of redemption by the defendant William, it would compel the defendant Harriet, or her interest in the farm, to pay a part of his debt. The renewal of the trouble between these defendants, who are husband and wife, resulting in a second separation, prevented the mortgage debts being paid as was contemplated at the time of the ante-nuptial contract. These mortgages belonged to the husband to pay. The intention was that the conveyance of half the farm to Harriet should settle and remove her lien thereon

under her decree for alimony, but this lien was to continue until the mortgages were paid. Harriet has received only a small portion of her alimony, and still holds the title to one-half the farm. The orator holds both mortgages and has been in possession under them, taking the rents and profits since the spring of 1877, amounting to $200 per year. This bill is brought to foreclose, and the question is whether the whole or one-half of the rents and profits shall be applied on the mortgage debt; or stated in another form, whether the rents and profits of the wife's half of the farm shall be applied. We think it should not, if the husband redeems. It was not her debt to pay. As against the husband, the deduction of rents and profits should be at the rate of $100 per year, instead of $200, as provided in the decree. If he does not redeem, then the deduction, for the purpose of fixing the amount of the decree as against the wife, should be at the rate of $200 per year, as stated in the decree. The decree was correct in providing that if she was compelled to redeem she should be subrogated to the rights of the petitioner against William, and may enforce the same against his half of the farm. When the mortgages are paid, her deed will operate a satisfaction of her decree for alimony. That was the intention of the parties and the fair import of the ante-nuptial contract.

Decree reversed and cause remanded with mandate.